IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JULIO BÁEZ-RIVERA,

    Plaintiff,

    v.          CIVIL NO.: 12-1390 (MEL)

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**OPINION AND ORDER**

**I.    PROCEDURAL AND FACTUAL BACKGROUND**

Julio Báez-Rivera ("plaintiff" or "claimant") was born on September 6, 1947 and has a "marginal fourth grade education". (Tr. 23.) On November 3, 2005, plaintiff filed an application for Social Security disability insurance benefits, alleging disability beginning on April 15, 2003. (Tr. 16.) The date last insured was September 30, 2007. (Tr. 16.) Plaintiff had an unskilled "very heavy" work background. (Tr. 18; 35-36.) He tried to work from May 12, 2003 to July 13, 2003, but had to stop working due to medical problems that prevented him from performing his job duties. (Tr. 18.) Claimant's application was granted at the reconsideration level, with an established onset of September 5, 2007, the day after he reached sixty years of age. (Tr. 16.) He requested a hearing before an Administrative Law Judge ("ALJ"). Id. He waived his right to appear and testify at the hearing held on February 11, 2010, but he was represented by counsel at the hearing and a vocational expert ("VE") testified by telephone at the hearing. Id. The ALJ rendered a decision on June 4, 2010, finding at step five that plaintiff was not disabled between April 15, 2003 through September 4, 2007, but became disabled on September 5, 2007. (Tr. 26.) The Appeals Council denied plaintiff's request for review on March 27, 2012. (Tr. 1.) Therefore,

the ALJ's opinion became the final decision of the Commissioner of Social Security (the "Commissioner" or "defendant"). Id.

On May 25, 2012, plaintiff filed a complaint seeking review of the ALJ's decision pursuant to 42 U.S.C. § 405(g) and 5 U.S.C. § 706, alleging that defendant's finding that plaintiff was not disabled was not based on substantial evidence. ECF No. 1, ¶ 2, 6. Defendant filed an answer to the complaint and a certified transcript of the administrative record. ECF No. 10. Plaintiff and the Commissioner have filed supporting memoranda of law. ECF Nos. 17-18.

## II.  STANDARD OF REVIEW

The Social Security Act (the "Act") provides that "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the] conclusion." Irlanda-Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's decision must be upheld if the court determines that substantial evidence supports the ALJ's findings, even if a different conclusion would have been reached by reviewing the evidence *de novo*. Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st. Cir. 1981). The Commissioner's fact findings are not conclusive, however, "when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).

An individual is deemed to be disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). If the ALJ concludes that the claimant's impairment or impairments do prevent him from performing past

relevant work, the analysis then proceeds to step five. At this final step, the ALJ evaluates whether the claimant's residual functional capacity ("RFC"),[1] combined with his age, education, and work experience, allows him to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines that there is work in the national economy that the claimant can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g). Under steps one through four, the plaintiff has the burden to prove that he cannot return to his former job because of his impairment or combination of impairments. Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989) (per curiam). Once he has carried that burden, the Commissioner then has the burden under step five "to prove the existence of other jobs in the national economy that the plaintiff can perform." Id.

### III.   RELEVANT MEDICAL EVIDENCE[2]

On February 18, 2004, Psychiatrist Armando I. Caro evaluated plaintiff, and diagnosed him with severe major depressive disorder. (Tr. 242-45.) Dr. Caro noted that plaintiff's concentration, immediate memory, and short-term memory were impaired. (Tr. 243.) Based on their interactions, Dr. Caro noted that plaintiff's capacity for social interaction was impaired. Id.

On March 24, 2004, Dr. Luis Umpierre completed a Psychiatric Review Technique ("PRT") form and a mental residual functional capacity ("MRFC") assessment of plaintiff. (Tr. 246-263.) Dr. Umpierre's assessments were adopted as written by psychiatrist Dr. Luis R. Vecchini on June 22, 2004. Id. In the PRT form, Dr. Umpierre assessed that plaintiff was

---

[1] An individual's RFC is the most that he can do in a work setting despite the limitations imposed by his mental and physical impairments. 20 C.F.R. § 404.1545(a)(1).
[2] In his memorandum of law in support of his appeal to the court, plaintiff does not make any arguments regarding the ALJ's refusal to consider the alleged physical impairment for the purposes of evaluating his disability claim. See ECF No. 3. Therefore, a summary of the physical health evidence has been omitted from this section accordingly. Furthermore, the record contains information regarding plaintiff's mental health condition after September 7, 2007, which the ALJ relied upon in making his determination that plaintiff was disabled subsequent to that date. Because plaintiff does not make arguments regarding evidence in the record after said date, it has also been omitted from this section.

moderately limited in: 1) activities of daily living; 2) maintaining social functioning; 3) maintaining concentration, persistence, and pace, and 4) that he had no episodes of decompensation of extended duration. (Tr. 256.) In the summary conclusions section of the MRFC assessment ("Section I"), he concluded that plaintiff was moderately limited in the ability to: 1) remember locations and work-like procedures; 2) understand and remember detailed instructions; 3) carry out detailed instructions; 4) maintain attention and concentration for extended periods; 5) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; 6) work in coordination with or proximity to others without being distracted by them; 7) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of rest periods; 8) appropriately interact with the general public; 9) accept instructions and respond appropriately to criticism from supervisors; 10) get along with coworkers or peers without distracting them of exhibiting behavioral extremes; and 11) to respond appropriately to changes in work settings. (Tr. 260-61.) Dr. Umpierre's elaborations on these summary conclusions from the functional capacity assessment section of his MRFC assessment ("Section III") are not legible. (Tr. 262)

On April 24, 2006, psychiatrist Alberto Rodríguez Robles evaluated plaintiff, finding that plaintiff appeared depressed, had a slow, logical, coherent, and relevant flow of thought, average intellectual ability, and diminished attention and concentration. (Tr. 512-519.) State agency psychiatrist Dr. Carmen Piñero completed a PRT form and an MRFC assessment on June 23, 2006. ECF No. 23. Dr. Piñero diagnosed a depressive syndrome characterized by sleep disturbance, psychomotor agitation or retardation, decreased energy, and feelings of guilt or worthlessness. (Tr. 534.) She completed a PRT form, in which she assessed that plaintiff was moderately limited in: 1) activities of daily living; 2) maintaining social functioning; 3)

4

maintaining concentration, persistence, and pace; and 4) that he had no episodes of decompensation of extended duration. (Tr. 541.) In Section I of the MRFC assessment Dr. Piñero completed, she concluded that plaintiff was moderately limited in the ability to: 1) understand and remember detailed instructions; 2) carry out detailed instructions; 3) maintain concentration and attention for extended periods; 4) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; 5) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; 6) accept instructions and respond appropriately to criticism from supervisors; 7) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and 8) respond appropriately to changes in the work setting. (Tr. 545-46.) In Section III of the MRFC assessment she completed, she stated that plaintiff "can understand, remember and carry out short, simple and detailed instructions," [c]an maintain attention and concentration for at least two hours," "[c]an ask questions and request assistance," and "[c]an respond to changes in the work setting." (Tr. 547.)

## IV.   ANALYSIS

In the case of caption, plaintiff's primary argument is that the ALJ ignored the MRFC assessments completed by state agency psychologists Dr. Umpierre and Dr. Vecchini in reaching his decision and in the hypothetical questions posed to the VE. See ECF No. 17, at 3. 17. Plaintiff argues that the ALJ erred by not giving "good reasons" for disregarding their opinions. Id. at 18. The ALJ will evaluate all medical opinions he receives "[r]egardless of its source" unless a treating physician's opinion is given controlling weight. 20 C.F.R. § 404.1527(d)(2012). The ALJ can give less weight to a treating physician's opinion if he has good reason to do so. Pagán-Figueroa v. Comm'r of Soc. Sec., 623 F. Supp. 2d 206, 210-211 (D.P.R. 2009) (citing

Carrasco v. Comm'r of Soc. Sec., 528 F. Supp. 2d 17, 25 (D.P.R. 2007)). The ALJ did not err in failing to give good reasons, as the "good reasons" standard applies to the opinions of treating physicians, not those of state agency consultants like Dr. Umpierre and Dr. Vecchini.[3] However, "[20 C.F.R.] § 404.1527(f)(2) does require that the ALJ articulate the weight given to [state agency psychological consultants]." Hammond v. Barnhart, 124 F. App'x 847, 851 (5th Cir. 2005) (holding that although the ALJ erred in failing to provide an explanation of the weight given to the medical opinions of two state agency psychologists, remand was not warranted because such error was harmless).

Assuming that the ALJ erred in failing to provide an explanation regarding the weight she gave Dr. Umpierre's and Dr. Vecchini's opinion or in failing to mention said medical evidence, the relevant inquiry is whether such a failure was reversible error, as "[t]he First Circuit has applied a 'harmless error' rule in Social Security benefit cases." Ward v. Apfel, No. 98-168-B, 1999 WL 1995199, at *3 (D.Me. June 2, 1999) (citing Pérez Torres v. Sec'y of Health and Human Servs., 890 F.3d 1251, 1255 (1st Cir. 1989)) ("Accordingly, if the likely outcome on remand in this case is clear and the same as that reached in the decision under review, making the administrative law judge's admitted error essentially harmless, the court may uphold the denial of the plaintiff's claim."). In making his decision to base his RFC determination on Dr. Piñero's assessment of plaintiff, the ALJ stated "[t]here is no evidence in the record to contradict" her conclusions. ECF No. 23. Dr. Umpierre's and Dr. Vecchini's opinions are arguably subsumed within this statement. Moreover, the harmless error rule applies to the ALJ's failure to specifically mention state agency consultant Dr. Umpierre's evaluation. See e.g. Henke v. Astrue, 798 Fed.Appx. 636, 641 (7th Cir. 2012) (applying harmless error standard to reject the claimant's argument that remand was warranted because "the ALJ failed to mention the report of

---

[3] The ALJ did consider the opinions of Dr. Caro and Dr. Rodríguez regarding plaintiff's mental health. (Tr. 21.)

state agency medical consultant, Dr. Chan."); and Pasco v. Commissioner of Social Sec., 137 Fed.Appx. 828, 839 (6th Cir. 2009) (finding that the ALJ did not err in failing to mention the report of a consultative neurologist that evaluated the claimant because he was not a treating physician and "evaluated [her] only once at the request of the Commissioner.").

The fact that the ALJ's decision does not specifically mention the opinions of state agency consultants Dr. Umpierre and Dr. Vecchini or state the weight given to them does not constitute a reversible error. The Social Security regulations state: "We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation."[4] 20 C.F.R. § 404.1520a. Both Dr. Piñero and Dr. Umpierre evaluated these four parameters and arrived at identical conclusions regarding plaintiff's limitations in their PRT assessments: that he was moderately limited in activities of daily living, maintaining social functioning, and maintaining concentration, persistence. (Tr. 256; 541.) They were also in accord that he had not suffered any episodes of decompensation. Id. The majority of the boxes checked by Dr. Piñero and Dr. Umpierre were identical. Dr. Umpierre also noted moderate limitations in four areas that Dr. Piñero did not: 1) the ability to remember locations and work-like procedures; 2) the ability to work in coordination with or proximity to others without being distracted by them; 3) the ability to interact appropriately with the general public; and 4) the ability to get along with coworkers or peers without distracting them of exhibiting behavioral extremes. Neither clinician noted more than a moderate limitation in any area. (Tr. 256; 541.) Although Dr. Piñero and Dr. Umpierre did not check precisely the same boxes in Section I of their MRFC

---

[4] Consistent with 20 C.F.R. § 404.1520a, the PRT forms completed by Dr. Umpierre and Dr. Piñero use the following "five-point scale" to "rate the degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace)": "None, mild, moderate, marked, and extreme." Id. They use the following "four-point scale" to rate episodes of decompensation: "None, one or two, three, four or more." Id. "The last point on each scale represented a degree of limitation that is incompatible with the ability to do any gainful activity." Id.

assessments, "Section I is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment" of the state agency consultant who completes it. POMS DI 25010.060 (emphasis omitted); see also Pippen v. Astrue, No. 1:09cv308, 2010 WL 3656002, at *6 (W.D.N.C. Aug 24, 2010), adopted by 2010 WL 3655998 (W.D.N.C. Sept. 15, 2010) ("[A]s provided on the face of the form itself, the criteria found in Section I of the form should be used to provide a more detailed assessment of RFC in Section III of the form."). The slight differences between the boxes checked do not suggest that the ALJ's decision is not supported by substantial evidence.

The ALJ properly based his RFC determination on Section III of Dr. Piñero's RFC assessment. The ALJ determined that plaintiff had the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c), except that he is limited to understanding, remembering and carrying out short, simple instructions, maintaining attention and concentration for at least two hours, is able to ask questions and request assistance, and can respond to changes in the work setting. (Tr. 19-20.) In reaching this conclusion, the ALJ chose to disregard Dr. Piñero's opinion that plaintiff could also understand, remember and carry out detailed instructions, opting for including a more severe restriction in his RFC determination, as the ALJ found that he was not capable of this level of functioning. (Tr. 23.) Although Dr. Umpierre checked three summary conclusions from Section I related to plaintiff's ability to function socially, Dr. Piñero concurred with Dr. Umpierre that overall plaintiff's social functioning abilities were moderately limited in their PRT forms. The ALJ was not obligated to include each individual limitation noted in Section I in his RFC determination or in the hypothetical question he posed to the VE. Furthermore, as previously mentioned, Section III of Dr. Umpierre's report was not legible. Thus, it does not contain a decipherable elaboration on his findings in Section I that might undermine the ALJ's decision. Lastly, nothing in Dr. Umpierre's report undermines Dr. Piñero's conclusion that

plaintiff could sustain attention and concentration for a two-hour period. See Ramos-Troche v. Commissioner of Social Sec. Civ. No. 12-1334, 2013 WL 5232125, at (D.P.R. Sept. 16, 2013) (affirming Commissioner's decision where plaintiff pointed to evidence that the ALJ ignored but "none of the evidence presented by plaintiff specifically indicated that she was not even able to sustain attention or concentration for a two-hour interval."). Overall, the ALJ's RFC determination and hypothetical question posed to the VE are supported by substantial evidence in the record and the ALJ's failure to mention the reports completed by Dr. Umpierre and adopted by Dr. Vecchini was at most harmless error.

Plaintiff makes a secondary argument that the ALJ ignored substantial evidence in the record, based on a hypothetical that plaintiff's counsel posed to the ALJ. The attorney posed the following hypothetical to the VE:

> Once it is stipulated that there are 11 limitations, just so that I do not tired you reading each one of them, if we take into consideration the vocational profile, age, educational and work experience from a mental point of view, if he had moderate limitations in at least 11 out of those 20 criteria. [*sic*] I ask you, could he have functioned occupationally in any of the jobs you mentioned or any others that you know about existing in significant numbers in the national economy? (Tr. 670.)

The VE replied: "We understand vocationally that when you get to number ten or more in moderate. [*sic*] When you see all the number of moderates together, that is when we say the whole is more than the parts, this person has difficulties functioning in a satisfactory way in any job, and accountability is affected. So we understand that he is not able to do his past job or any other in the national economy." (Tr. 670.)

Plaintiff does not cite to any authority to that establishes a *per se* rule that ten moderate limitations equate to the inability to perform any work in the national economy. Moreover, it is not evident from the transcript that the VE was aware that the limitations derived from Section I

of an MRFC assessment. The fact that the limitations were from Section I strongly undercuts the credibility of the VE's response to the attorney's question, because as previously noted Section I is "merely a worksheet" and does not constitute a functional capacity assessment of the clinician who completes the form. See Smith v. Comm'r of Soc. Sec., 631 F.3d 632, 636-37 (3d Cir. 2010) (affirming district court's decision "[b]ecause [appellant] cannot rely on the worksheet component of the Mental Residual Functional Capacity Assessment to contend that the hypothetical question was deficient …."). The ALJ specifically stated that she considered "the additional questions asked by the claimant's attorney to the [VE]." (Tr. 24.) She stated that the totality of the evidence does not support the "treating physician's assessments," and therefore she chose not to credit the VE's responses. (Tr. 24-25.) As plaintiff points out, however, Dr. Umpierre and Dr. Vecchini were not his treating physicians, but rather were state agency consulting psychologists. ECF No. 17, at 18. This error does not impact the result that the ALJ's decision was based on substantial evidence, because as previously discussed their opinions do not contradict the evidence upon which the ALJ relied.

In response to the ALJ's hypothetical, which was based on the assessments completed by Dr. Piñero, the VE responded that two jobs existed in the national economy that such a hypothetical individual could perform: unskilled remnant sorter and unskilled hand packager. (Tr. 665.) The ALJ noted that the VE's testimony "is consistent with the Dictionary of Occupational Titles" ("DOT"). (Tr. 24.) See SSR 00-4p ("Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT."). Based on this testimony, the ALJ arrived at his finding that plaintiff was not disabled from April 15, 2003 through September 4, 2007.

Ultimately, the Commissioner's decision must be affirmed "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his

conclusion." <u>Irlanda Ortíz</u>, 955 F.2d at 769. In this case, Dr. Piñero's opinion is adequate to support the ALJ's conclusion. The ALJ indicated that nothing in the record contradicted the opinion of Dr. Piñero, which the ALJ relied upon in reaching her determination regarding plaintiff's mental health RFC. Although plaintiff has identified evidence in the record which the ALJ neglected to specifically mention in her decision, plaintiff has not shown that said evidence contradicts the ALJ's opinion, such that the outcome of the ALJ's disability determination might be different upon consideration of said evidence. Based on the foregoing analysis, the court concludes that the decision of the Commissioner was based on substantial evidence. Therefore, the Commissioner's decision is hereby AFFIRMED.

    IT IS SO ORDERED.

    In San Juan, Puerto Rico, this 27th day of March, 2014.

s/Marcos E. López<br>U.S. Magistrate Judge